Matthias, J.
 

 The question for the determination by this court is whether the record discloses undisputed evidence which entitles the plaintiff to the remedy of injunction.
 

 The defendant entered upon her employment pursuant to the terms of the contract after receiving the information, advice and training in accordance with the plan of operation adopted by the plaintiff and continued until she resigned therefrom. In her letter of resignation the defendant stated as follows:
 

 “As you know I have been married since taking this position in September 1938, and now at best I would only be able to continue working a few months. All things considered I feel I should terminate my con
 
 *506
 
 .tract. In order to do this effectively and cleanly, will you please return my contract to me, and instruct me .as to what disposition to make of your supplies which I have here!”
 

 The record discloses that during the period of her ■employment by the plaintiff the defendant not only had full knowledge of-the plaintiff’s business and his methods of operation, but also had immediate and personal contact with the customers of the plaintiff in the •city of Toledo, being the so-called sponsors who constituted the financial support and maintenance of the whole enterprise.
 

 The true reason for the severance of service with the plaintiff was disclosed by her subsequent action, for immediately upon the termination of that service, the Toledo Newcomers Service Company was established in that name, the organization being effected ostensibly by defendant’s husband who was in fact •devoting full time and attention to an occupation other than the advertising business. The record discloses that the new company pursued substantially the same plan as that adopted and employed by the plaintiff, .and in the performance and promotion of which contracts with business establishments as sponsors had been procured and patrons thereof solicited. The defendant, during the period of her contract, had been in frequent personal contact with the sponsors of the plaintiff. Contracts with several business houses as sponsors were secured by the defendant for the newly ■organized company within a few days after her resignation from her employment with the plaintiff, some of whom had been contacted by her while still in the service of the plaintiff, and others, at least two, who were then under contracts with the plaintiff. The evidence is therefore undisputed that the defendant is engaged in a business in direct
 
 *507
 
 competition with the plaintiff and is doing the very-same work in her present employment that she had previously performed for the plaintiff. The violation of the express terms and provisions of the contract is fully established by the evidence. The validity of such contract is challenged and its enforcement by injunction accordingly resisted.
 

 It is stated in 17 Corpus Juris Secundum, 636, Section 254, that “it is the rule in the absence of contrary statute that agreements by which an employee as part of his contract of employment undertakes not to enter into a competing business on leaving his employer’s service are sustained if they are no wider than reasonably necessary for the protection of the employer’s business, and do not impose undue hardship on the employee, due regard being had to the interests of the public. ’ ’
 

 The determination of the necessity for such restriction is dependent upon the nature and extent of the business and the nature and extent of the service of the employee in connection therewith and other pertinent conditions.
 

 Many cases are cited in the text which involve the application of this rule wherein it is quite generally held that contracts whereby salesmen, agents, canvassers and other employees who come into personal contact with their employer’s customers agree not to engage in a competing business within a limited time or area after leaving their employer’s service are valid and enforceable; contracts of restricted employment which are deemed invalid are those which impose a restraint held to be wider than reasonably required for the protection of the employer’s business, or unreasonably restrictive upon the rights of the employee, or in contravention of the public interest. The cases involving contracts containing covenants restricting subsequent employment are almost limitless in number and
 
 *508
 
 ■are cited in annotations in 9 A. L. R., 1456, 20 A. L. R., 861, 29 A. L. Rv 1331, 52 A. L. R., 1362, 67 A. L. R., 1002 and 98 A. L. R., 963.
 

 Those cited in 98 A. L. R., 963, are under the annotation of the opinion of the case of
 
 Grand Union Tea Co.
 
 v.
 
 Walker,
 
 208 Ind., 245, 195 N. E.,
 
 277,
 
 98 A. L. R., 958, decided by the Indiana Supreme Court in 1935. The general rule heretofore stated was applied, resulting in the holding by the court that an agreement by one employed as head salesman in certain territory by a company engaged in retailing teas, coffees, baking-powders, spices and extracts not to engage for a period •of 18 months after the termination of his employment in the business of selling- or soliciting orders for like merchandise in the territory under his charge, is not .against public policy, being reasonably necessary for the protection of the employer’s business, and not unreasonably restrictive upon the rights of the employee.
 

 A similar case is that of
 
 Deuerling
 
 v.
 
 City Baking Co.,
 
 155 Md., 280, 141 A., 542. In violation of the terms of a restrictive contract relative to similar employment in the same territory following- severance of connection with the contracting employer, the court held in substance that such a case is not one of restricting an employee from getting subsequent employment by reason of his knowledge or skill acquired by experience in a similar business under a former employer, but is one where the violation of his negative covenant enables him to sell his services to a competitor for a higher wage than he would naturally be able to obtain if he had not violated the covenant and to the detriment and damage of his former employer. The employee in that instance was a driver-salesman who had assigned to him certain territory in which he solicited and made sales of the products of his employer. The court concluded that such restraint was reasonably necessary
 
 *509
 
 for the protection of the appellant and that it was not unreasonably restrictive upon the rights of the appellee nor invalid as against public policy.
 

 In the case of
 
 Wark
 
 v.
 
 Ervin Press Corp.,
 
 decided by the United States Circuit Court of Appeals of the Seventh Circuit, and reported in 48 F. (2d), 152, the court held that an employee’s agreement not to compete with an employer after leaving employment would be enforced when reasonably limited as to time and place, holding specifically that such agreements, when reasonably calculated to protect the lawful business of the employer, will be enforced, even though the service is not of unique and special nature. The court, in the opinion, stated that its conclusion was in harmony with the trend of modern authorities.
 

 Of similar import is the holding of the Supreme Court of Vermont in the case of
 
 Dyar Sales & Machinery Co.
 
 v.
 
 Bleiler,
 
 106 Vt., 425, 175 A., 27.
 

 The fact that in the operation of a business the public may learn methods, systems and trade usages does not make such methods public property and consequently deprive an employer of any protection. Lists of customers have always been protected in equity, notwithstanding that any person who troubled to follow the salesman could compile a reasonably correct list of his customers.
 

 A business is built upon the confidence of its customers and the employee gains acquaintances and sells the customers by using the good will of the employer. The employer’s dealings with his customers through the employee gives the employee confidential knowledge that should not be divulged or used for his own benefit. It is by reason of this personal, if not confidential, relationship which the parties sustain that contracts to protect the employer by restriction of subsequent employment within reasonable limits of time and of space are permitted and sanctioned, and equity
 
 *510
 
 w-ill enjoin the employee from competing in violation, of his covenant.
 

 Unquestionably the decision of every case of this-nature turns upon and in great measure is governed by its own peculiar facts. In the instant case, the manner of operation of the business of the plaintiff and the character of the service to be performed by the-defendant in connection therewith show the rather unusual nature of the enterprise which, in the contract before us, is denominated “unique and original.”
 

 It is to be observed that the restrictive provisions-of the contract relate only to “the same kind or similar business, in competition with the company in Toledo,”' etc., and do not undertake otherwise to prevent or limit the trade, occupation, profession, business or activities of the defendant. The clear purpose and effect of the contract is to prevent or at least to limit the appropriation of the benefits of information and experience secured in her service with the plaintiff and the employment thereof for her own personal advantage and to the disadvantage of the plaintiff by becoming a direct, competitor, as in fact did occur in this instance.
 

 It may be questioned whether the attribute of uniqueness has no place in the consideration of the question presented in this case. It is applied.generally with reference to a contract which precludes the rendition of service to another during the period of the contract. The injunction sought in such cases is in effect an action for specific performance and necessitates a showing that the service of such employee is of an extraordinary, peculiar or unique character for which a substitute cannot readily be procured. That necessity of showing the uniqueness of the employee’s service does not exist where the covenant sought to be enforced is one limiting or precluding competitive
 
 *511
 
 activity subsequent to the termination of tbe employment is held in 31 L. R. A. (N. S.), 249; 35 L. R. A. (N. S.), 120; and specifically in
 
 Dyar Sales & Machinery Co.
 
 v.
 
 Bleiler, supra.
 

 For the reasons indicated, we are of opinion that under the facts disclosed by the record the restrictive ■covenants of the contract entered into by and between the plaintiff; and defendant do not impose a restraint ■beyond that reasonably required for the protection of the employer in his business, that such provisions are not unreasonably restrictive upon the rights of the ■employee and do not contravene public policy and are therefore valid and enforceable.
 

 The conclusion reached upon the particular facts in this case are in no wise inconsistent with the results reached and announced in the following cases, each ■of which involved conditions imposed in contracts involving the purchase and sale of interests in business:
 
 Lange
 
 v.
 
 Werk,
 
 2 Ohio St., 519;
 
 Thomas
 
 v.
 
 Admr. of William P. Miles,
 
 3 Ohio St., 274;
 
 Morgan
 
 v.
 
 Perhamus,
 
 36 Ohio St., 517;
 
 The Lufkin Rule Co.
 
 v.
 
 Fringeli,
 
 57 Ohio St., 596; or in
 
 Curry
 
 v.
 
 Marquart,
 
 133 Ohio St., 77, which involved an employment contract containing no restrictive covenant whatever.
 

 For the reasons stated, we are in accord with the finding and order of the Court of Common Pleas and direct that a similar decree be entered in this court.
 

 Judgment reversed.
 

 Weygandt, C. J., Turner, Williams, Hart and Zimmerman, JJ., concur.
 

 Bell, J., not participating.