FEDERATED MUTUAL IMPLEMENT &
HARDWARE INSURANCE COMPANY,
and FEDERATED LIFE INSURANCE
COMPANY, Appellants, v. GAINES H.
JOHNSON, Appellee.—382 S.W.(2d) 214.

Eastern Section.

Heard by Western Section, at Knoxville. May 1, 1964.

Certiorari Denied by Supreme Court September 4, 1964.

Ambrose, Wilson & Saulpaw, Knoxville, for appellants.

Simmonds, Bowman & Herndon and Harry N. Fortune, Johnson City, for appellee.

BEJACH, J. This cause involves an appeal by Federated Mutual Implement and Hardware Insurance Company and Federated Life Insurance Company, Minnesota corporations, from a decree of the Chancery Court of Washington County, Tennessee, dismissing their suit against the defendant Gaines H. Johnson, and dissolving a temporary injunction which had previously been issued enjoining defendant Gaines H. Johnson from violating terms of his employment contract with said insurance companies. In this opinion the parties will be styled, as in the lower court, complainants and defendant, or called by their respective names, the complainants being sometimes referred to as the Insurance Companies and defendant as Johnson.

On or about August 5, 1957, the complainant Federated Mutual Implement and Hardware Insurance Company and the defendant Johnson entered into a salesman's employment contract under the terms of which Johnson was employed as an insurance salesman. The Mutual Implement and Hardware Insurance Company is an insurance

company writing fire, casualty, and accident and health insurance, and the Federated Life Insurance Company is an insurance company writing life insurance. The defendant worked under his contract with the Federated Mutual Implement & Hardware Insurance Company until November 20, 1959, at which time, that insurance company, having taken over the Federated Life Insurance Company, a revised contract between both of said insurance companies and the defendant Johnson was entered into. From said revised contract, which is the one involved in this litigation, we quote paragraphs 5 and 8, which are as follows:

"5. Salesman agrees that he will not, within a period of two years following the date of the voluntary or involuntary termination of his employment with Employer, or his retirement therefrom, either directly or indirectly, by and for himself, or as the agent of another, or through others as his agent:

"(a) Engage in, or in any way be connected with, the Fire, Casualty, Accident and Health, and Life Insurance business in the territory assigned to him or worked by him under this Employment Contract;

"(b) Divulge the names of Employer's policyholders and accounts to any other person, firm or corporation;

"(c) In any way seek to induce, bring about, promote, facilitate or encourage the discontinuance of or in any way solicit for and in behalf of himself or others, or in any way quote rates, accept, receive, write, bind, broker, or transfer any renewal or replacement of any of the insurance business, policies, risks or accounts, written, issued, covered, obtained (whether through the efforts of the Salesman or not) or carried

by the Employer in the territory assigned to the Salesman under this Employment Contract.''

\* \* \* \* \* \*

''8. In the event of any breach or violation by the Salesman of this Employment Contract, the Employer shall have the right to enforce specific performance of all the agreements on the part of the Salesman. Salesman also agrees that in the event a suit or action is instituted by Employer against him for violation of any of the agreements contained in this Employment Contract, Salesman will pay to Employer, in addition to any costs and disbursements provided by law, an additional sum of Five Hundred ($500.00) Dollars, in lawful money, for attorney fees and other expenses of litigation. The rights and remedies given to or reserved by the Employer hereunder shall be construed and held to be cumulative and not exclusive of any other right or remedy available to Employer.''

After a period of training, defendant was assigned to the territory consisting of the following counties of Tennessee: Carter, Johnson, Unicoi, Washington, and Sullivan, except the City of Bristol, in which counties he worked from the time of the original contract until March 14, 1962 when he terminated his employment by letter, in which letter he requested that his resignation be accepted as of April 1, 1962.

On or about April 1, 1962, as is alleged in complainants' bill, the defendant entered into the insurance business by joining the insurance staff of Wofford Brothers, Inc. and Johnson City Insurance Company, Inc., general insurance agencies located in Johnson City, Tennessee, since which date he has engaged in the insurance business

and solicited for said agencies or on behalf of himself, insurance business in one or more of the counties above enumerated.

On May 19, 1962, complainants filed their bill in the Chancery Court of Washington County, seeking specific performance of their contract with defendant and praying for an injunction, for an award of $500.00 attorneys' fees, together with the costs of the cause, and for such further and other relief to which they might be entitled. A fiat for a temporary injunction as prayed for in the bill was signed by Chancellor Charles E. Dawson of Knox County, and a temporary injunction was issued in accordance with the prayers of complainants' bill.

On May 23, 1962, defendant filed an answer and cross bill in which he admits the execution of the contract with complainants, but asserts that his signature thereto was obtained by misrepresentation. He asserts further that specific performance of said contract would work a great hardship on him, the terms of same being harsh and unreasonable, that the provisions which prevent him from engaging in the insurance business in Johnson City and nearby areas is unfair and were inserted in said contract without consideration, and further, that the provisions of said contract are unreasonable as to time and space, insofar as same purports to limit the activity of the defendant as an insurance agent. Defendant in said answer and cross bill asserts that the complainants are indebted to him in a sum, the exact amount of which is unknown, but that same is in excess of $500.00. The cross bill prays for judgment for such sums of money as may be due and for a dissolution of the injunction.

On May 29, 1962, the Chancellor modified the temporary injunction so as to permit the defendant to engage in the

insurance business, with certain limitations, the details of which we need not now consider. On October 19, 1962, about one month before the trial, the defendant amended his answer and alleged that during the term of the contract, another agent of complainants, with their knowledge, solicited and wrote insurance contracts in Sullivan County, not in the City of Bristol, which contracts were accepted and ratified by the complainants without the consent or knowledge of the defendant, and that such action on the part of complainants was a breach of its contract with him, and consequently that they came into court with unclean hands, and that his contract with them was void and of no effect because of such breach.

The cause was heard on November 26, 1962, at which time the Chancellor took same under advisement. He rendered his memorandum opinion on March 5, 1963. In that opinion he ruled that the contract gave to defendant an exclusive agency and an exclusive territory, and that since the complainants permitted another agent from Bristol, Tennessee to sell policies in Sullivan County outside of Bristol, they breached their contract with defendant and came into court with unclean hands, and that it would be an unconscionable invasion of equity to permit complainants to breach their contract with defendant and rely upon specific performance at the same time. Said opinion also ruled that the decision of this Court in Federated Mutual Implement and Hardware Insurance Co. v. Anderson, 49 Tenn.App. 124, 351 S.W. (2d) 411, was not controlling on the facts of the instant case. On March 21, 1963, a final decree in accord with said opinion was entered which dismissed both the original bill and the cross bill, and divided the costs of the cause between complainants and defendants. Along

with the dismissal of complainants' bill, the temporary injunction was dissolved. Complainants excepted to said decree, prayed and have perfected their appeal to this Court.

In this Court, complainants, as appellants, have filed six assignments of error. We deem it unnecessary to copy these assignments of error into this opinion or to discuss same separately. They present adequately complainants' contentions that complainants should have been granted a permanent injunction restraining defendant from engaging in the insurance business in the territory covered by his contract with complainants, until April 1, 1964, and that complainants should have been granted a decree against defendant for the sum of $500.00, as is provided for in defendant's contract with complainants.

 We think the case at bar is controlled by the decision of this Court, Eastern Section in Federated Mutual Implement and Hardware Insurance Co. v. Anderson, 49 Tenn.App. 124, 351 S.W.(2d) 411; and, consequently, that the Chancellor erred in dismissing complainants' bill, and in modifying and then dissolving the injunction previously issued in this cause. The complainant in the Anderson case was the Federated Mutual Implement & Hardware Insurance Co., one of the complainants in the instant case, and the contract which was upheld in that case contained the same provisions as the contract involved in the instant case. In that case, many of the defenses which are asserted in the instant case were also set up. In that case, the provision of the contract excluding the defendant from the insurance business in the territory covered by his contract for two years after termination of his services was expressly upheld as

being reasonable as to time, and the territory consisting of six counties was held to be reasonable as to space. In the instant case, the defendant's territory was only four counties and part of a fifth. From the opinion of the Court of Appeals in the Anderson case, written by Cooper, J., we quote, as follows:

"Contracts to protect an employer by restriction of subsequent employment of the employe within reasonable lengths of time and space are permitted and sanctioned and equity will enjoin an employe from competing in violation of the restrictive provisions of his employment contract. Turner v. Abbott, 116 Tenn. 718, 94 S.W. 64, 6 L.R.A., N.S., 892; Matthews v. Barnes, 155 Tenn. 110, 293 S.W. 993, 52 A.L.R. 1350; Arkansas Dailies [Inc.] v. Dan, 36 Tenn.App. 663, 260 S.W.(2d) 200, 204.

"The restrictive provisions in the present employment contract limited defendant's activities for a two-year period of time only in the territory in which he worked as an employe of the complainant. This restriction was reasonable as to time and space in view of the nature of complainant's business, the terms of the policies, and the defendant's admitted knowledge of the complainant's policyholders, their coverage, rates and the expiration dates of their policies.

"As stated in Arkansas Dailies [Inc.] v. Dan, supra:

" ' "A business is built upon the confidence of its customers and the employee gains acquaintances and sells the customers by using the good will of the employer. The employer's dealings with his customers through the employee gives the employee confidential knowledge that should not be divulged or used for his

own benefit. It is by reason of this personal, if not confidential, relationship which the parties sustain that contracts to protect the employer by restriction of subsequent employment within reasonable limits of time and of space are permitted and sanctioned, and equity will enjoin the employee from competing in violation of his covenant. Briggs v. Butler, 140 Ohio St. 499, 45 N.E.(2d) 757, 762.'''

''We are of the opinion, therefore, that the chancellor erred in dissolving the injunction in this case.

''Further we are of the opinion that the complainant is entitled to damages resulting from the defendant's breach of the restrictive covenant in the employment contract.'' Federated Mut. Imp. & Hardw. Ins. Co. v. Anderson, 49 Tenn.App 132-134, 351 SW.(2d) 415-416.

■ In the instant case, the only question of damages claimed by complainants is their prayer for recovery of the $500.00 provided for in paragraph 8 of defendant's contract. This may properly be treated as liquidated damages.

In the case at bar, it is contended that the contract here involved gave to defendant an exclusive territory as therein set out, and the complainants breached this contract by permitting an agent in Bristol, Tennessee to sell insurance in Sullivan County outside of Bristol, which constituted a breach of the contract by complainants and therefore precluded enforcement of same by them. Complainants contend, on the other hand, that defendant's contract does not grant to him exclusive rights in the territory named. They also contend that the sale of policies by their agent in Bristol, to persons in Sullivan County outside of Bristol, did not constitute a

breach of defendant's contract, even if same gave to him exclusive territorial rights. They make this contention, because the policies so sold were to persons who lived in Sullivan County outside of Bristol, Tennessee, but whose addresses were in Bristol, Tennessee; and that, in any event, defendant had known of such sales and had made no complaint about them. We consider it unnecessary to decide whether or not the contract here involved granted to defendant exclusive rights in the territory named, and especially so, since it is our opinion that either of the other two objections raised by complainants is sufficient to eliminate this defense.

Several witnesses for complainants testified that the mailing address controls the business and area to be solicited by employees. Mr. Gene Felty, an employee of complainants, who worked out of the Mid-Atlantic Division, and who was assigned nine counties in southwest Virginia, and also Bristol, Tennessee, testified that he had written insurance policies for people on R.F.D. routes out of Bristol, Tennessee, most of whom worked in Bristol, and that some of his policy holders had moved from within the City of Bristol to Bristol addresses just outside the city limits. Mr. Carl V. Whitaker, general sales manager for complainants' Southern Division testified that territories which are assigned to complainants' employees are often divided, there being nothing in the contract that prohibits one employee from going into another's territory and writing a policy of insurance, and that the mailing address controls the business area to be solicited by the employee. This testimony was corroborated by Mr. Peterson, State of Tennessee agent for complainants. Mr. Felty testified further that he had never encountered defendant in the Bristol

·area, nor had the defendant ever contacted him, nor made any complaint. Defendant, himself, testified that he learned about Mr. Gene Felty, who was located in Bristol, Tennessee, having written a contract of insurance in November 1961 for a person living outside the city limits of Bristol, Tennessee, but that he did nothing about it because he was looking for something else and he wanted to get out from under his contract, and "just let it go." In the case of Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Publishing Co., 42 Tenn.App. 92, 298 S.W. (2d) 788, the ninth headnote to the published report of that case, is:

"Generally, strict performance of contract by one party may be waived by the other, and conditions precedent may be waived by the party in whose favor they are made."

It is, therefore, our opinion that even if the contract involved in the instant case should be construed as granting to defendant exclusive rights in the territory specified therein, and even if the mailing address should be held not to be conclusive, nevertheless, defendant must be held to have waived any such breach of his contract as a defense to complainants' suit for injunction. There is also testimony in the record to the effect that if defendant had considered sales by Mr. Felty to be a breach of his contract, his remedy was to apply to the company to have the commissions on the sales made in his territory paid to him.

Our conclusion is that the Chancellor erred in dismissing complainants' bill, and in modifying and later dissolving the temporary injunction granted at the time the bill was filed. Inasmuch as the two years time during which complainants were entitled to have the injunction

enforced expired on April 1, 1964, this question has become moot. The provision in paragraph 8 of the contract between complainants and defendant, which entitles complainants to $500.00 for attorneys' fees and other expenses of litigation, has not, however, become moot. Complainants may have a decree in this Court against the defendant Gaines H. Johnson for that amount.

The costs of the appeal and also those of the lower court, including those adjudged in the lower court against complainants, will be adjudged against the defendant, Gaines H. Johnson.

Avery, P.J.,(W.S.), and Carney, J., concur.