COLUMBUS MEDICAL EQUIPMENT COMPANY, APPELLEE, *v.* WATTERS, APPELLANT.

(No. 82AP-618—Decided November 10, 1983.)

*Messrs. Smith & Gunner* and *Mr. Michael T. Gunner,* for appellee.

*Messrs. Bodiker & Holland* and *Mr. Robert J. Holland,* for appellant.

MOYER, J. This case is before us on the appeal of defendant-appellant, Judith Ann Watters, from a judgment of the Franklin County Court of Common Pleas enjoining defendant from violating the terms of her employment agreement with plaintiff-appellee, Columbus Medical Equipment Company ("Columbus Medical"), by continuing to work for one of plaintiff's competitors, Wendt-Bristol Company ("Wendt-Bristol").

Defendant began working for plaintiff in August 1980. Her job duties included answering the telephone, waiting on customers, taking orders, and selling and renting durable medical equipment. The phrase "durable medical equipment" means wheelchairs, walkers, commodes, hospital beds, crutches, canes, and other medical equipment which can be cleaned and reused.

Although she was asked to sign an employment agreement containing a covenant not to compete when she began working at Columbus Medical, defendant did not sign the agreement at that time. On July 9, 1981, defendant had a disagreement with the president of Columbus Medical and apparently told another employee that she was considering resigning. On July 10, 1981, defendant, during a meeting with plaintiff's president, signed the employment agreement and received an $800 raise, a longer lunch break one day a week, one day off, and permission to stop using the time clock to record her work hours. The employment agreement contained the following clause:

"4.02 The Employee covenants and agrees as follows: On termination of his employment * * * the Employee sahll [*sic*] not directly or indirectly enter into or

engage in direct competition with Employer in the State of Ohio in a same or similar business for the sale and rental of durable medical equipment and respiratory support equipment for a period of two (2) years after the date of termination of this Agreement."

On July 21, 1981, defendant began interviewing for jobs with other companies, including Wendt-Bristol. After her first interview with Wendt-Bristol, defendant removed her employment agreement from a file in the office of another Columbus Medical employee and destroyed it. Defendant testified that she understood the terms of the covenant not to compete but felt that it was ridiculous and would be unenforceable.

Defendant quit working for Columbus Medical on September 8, 1981 and began working for Wendt-Bristol on September 14, 1981. Defendant admitted that Wendt-Bristol and Columbus Medical are competitors.

Defendant knew that Wendt-Bristol was offering her a job renting durable medical equipment and she told Wendt-Bristol that she knew the equipment and how to rent it and sell it. Wendt-Bristol did not rent durable medical equipment before defendant began working there and, after defendant was hired, she worked in Wendt-Bristol's new rental department.

When defendant left plaintiff's employ, she took with her a list of customers and source people which she had compiled while working for plaintiff. Defendant then sent a brochure, which she testified was designed to "let people know where I was" and "that I was no longer at Columbus Medical" to everyone on the list who she thought might refer business to her.

Plaintiff filed its complaint for an injunction after some of plaintiff's customers entered plaintiff's store carrying defendant's brochures and plaintiff discovered that defendant was working for Wendt-Bristol. ·

Since the assignments of error defendant has listed on page one of her brief in accordance with App. R. 16(A)(2) vary significantly from the assignments of error argued throughout her brief, we will discuss the assignments of error defendant has argued. Those assignments of error read as follows:

"I. The employment agreement, signed July 10, 1981 by the parties, is not supported by adequate consideration and is invalid.

"II. The issuance of the injunction in this case is contrary to law and unwarranted by the facts of the case.

"III. The award of attorneys fees to appellee was improper, exceeded the trial court's authority and should be overruled."

The following well-established principle of contract law is dispositive of defendant's first assignment of error:

"While it is necessary that the consideration of a promise should be of some value, it is sufficient if it be such as *could* be valuable to the party promising; and the law will not enter into an inquiry as to the adequacy of the consideration, but will leave the parties to be the sole judges of the benefits to be derived from their contracts, unless the inadequacy of consideration is so gross as of itself to prove fraud or imposition." (Emphasis *sic*.) *Judy* v. *Louderman* (1891), 48 Ohio St. 562, paragraph two of the syllabus.

Defendant promised not to work for a competitor of plaintiff in the state of Ohio for two years after she left plaintiff's employ. In exchange, plaintiff retained defendant as an employee, increased her salary, and gave her several other job-related privileges. Defendant fully understood the covenant not to compete when she agreed to it and she received bargained-for benefits from plaintiff in exchange for her promise. The consideration supporting the agreement is not grossly inadequate, and defendant's first assignment of error is not well-taken and is overruled.

Defendant argues in support of her second assignment of error that the covenant not to compete is an unreasonable and unenforceable restraint on trade.

Defendant has attempted to demonstrate that since plaintiff and Wendt-Bristol each sell or rent equipment that the other does not, they are not true competitors. The evidence demonstrates that plaintiff and Wendt-Bristol are both in the business of selling and renting durable medical equipment. Minor distinctions between the two businesses are insufficient to establish that the companies are not competitors, particularly when defendant acknowledged that Wendt-Bristol and plaintiff are competitors.

Since the companies are competitors, defendant is clearly violating the terms of the restrictive covenant by working for Wendt-Bristol, and the only remaining issue presented by this assignment of error is whether the covenant is enforceable.

The rule dispositive of this issue is found in *Briggs* v. *Butler* (1942), 140 Ohio St. 499 [24 O.O. 523], paragraphs one, two and three of the syllabus, and in paragraphs one and two of the syllabus of *Raimonde* v. *Van Vlerah* (1975), 42 Ohio St. 2d 21 [71 O.O.2d 12]. Paragraph two of the syllabus of *Raimonde* lists three requirements which must be met in order for a covenant not to compete to be enforceable: first, the restraint must be no greater than that which is required to protect the employer; second, it must not impose undue hardship on the employee; and, third, it must not be injurious to the public.

We must first determine whether the restraint is greater than that which is required to protect plaintiff's business. Plaintiff sells and rents durable medical equipment, not only to people who come to plaintiff's showroom but also through contracts with hospitals and other users of such equipment. Plaintiff's president testified that he submits bids to organizations, such as the Muscular Dystrophy Association, which state the price of a piece of durable medical equipment and that each patient-customer whom the agency refers to plaintiff is then entitled to buy or rent the equipment from plaintiff at that price.

Defendant compiled and took with her a list of the source people at these agencies who refer patients to companies which sell and rent durable medical equipment and defendant sent her brochures to the source people on her list. At least one of these people became a customer of Wendt-Bristol. *Briggs* v. *Butler, supra,* involved, as does the present case, an employee who had contact with many of the employer's customers and source people. In *Briggs,* two customers who had been under contract with the employer entered into contracts with the defendant-employee when she and her husband began a competitive business. The Ohio Supreme Court noted, in *Briggs,* that customer lists have always been protected in equity even though any person who took the trouble to do so could compile a reasonably correct list of the employer's customers. *Briggs* v. *Butler, supra,* at 509. Defendant's contentions that a large number of customers must switch their business to her new employer and that the telephone numbers of all of plaintiff's customers may be found in the telephone book are, under *Briggs* v. *Butler, supra,* not well-taken.

Since developing a list of source people is a relatively difficult task, since Wendt-Bristol did not have a rental department until they hired defendant, and since both companies rent and sell durable medical equipment throughout Ohio, the trial court's findings, that the covenant not to compete in a similar business in Ohio for two years was not overly restrictive and that the covenant was reasonably designed to protect plaintiff's business, are supported by the evidence.

The second factor to be considered is whether the covenant unduly restricts the employment opportunities of the em-

ployee. *Raimonde* v. *Van Vlerah, supra,* paragraph two of the syllabus; *Briggs* v. *Butler, supra,* paragraphs one, two and three of the syllabus. Defendant testified that the jobs she held before she began working for plaintiff had not involved durable medical equipment; that she could sell anything; that she has always been employed and able to get a job; that the agreement only prohibits her from selling and renting durable medical equipment; and that, when she interviewed with Wendt-Bristol, she also interviewed with companies that did not sell or rent durable medical equipment. All of defendant's testimony indicates that she is confident that she can easily get another job and that she is not challenging the restrictive covenant because it will prevent her from being gainfully employed. None of the evidence indicates that the covenant imposes an undue hardship upon defendant.

Finally, it is not argued and there is no evidence to support a finding that the covenant here is injurious to the public.

This case is distinguishable from this court's opinion in *Murfin, Inc.* v. *Kyle* (Mar. 25, 1980), Franklin App. No. 79AP-602, unreported, since in *Murfin* the two employers were not direct competitors, the former employer conceded that it had not been harmed, and there was no indication that the defendant-employee could obtain any other employment.

*Williams* v. *Hobbs* (1983), 9 Ohio App. 3d 331, is also distinguishable since in *Williams* the majority held that the employment contract imposed an undue hardship on plaintiff, a radiologist, by prohibiting him from practicing his profession and that the restrictive covenant contravened public policy by depriving the public of the services of a skilled radiologist.

The restrictive covenant in the present case is valid and enforceable and injunction was the proper remedy to enforce it. Furthermore, although the covenant prohibited competition for two years

following the termination of defendant's employment, and that two-year limit has expired, it would clearly be inequitable to hold that, since the two years have expired while defendant pursued her appeal of the trial court's judgment granting the injunction, plaintiff has no recourse at this point.

Defendant has apparently continued to work for plaintiff's competitor while this case has been on appeal to this court. As the Ohio Supreme Court noted in *Raimonde* v. *Van Vlerah, supra,* at 27-28, it would emasculate the clear intent of Civ. R. 54(C), which provides that every final judgment shall grant the relief to which the prevailing party is entitled, to hold that plaintiff is entitled to an injunction, but that plaintiff is precluded from enforcing the judgment since more than two years have passed since defendant left plaintiff's employ. In *Raimonde,* the Ohio Supreme Court "specifically empowered * * * [the trial court] to grant injunctive relief * * * for the period of time to which * * * [plaintiff is] entitled." *Raimonde* v. *Van Vlerah, supra,* at 28. Thus, the portion of the trial court's judgment granting injunctive relief "for the period ending September 7, 1983" must be reversed and remanded so that the trial court may determine whether plaintiff is entitled to an injunction prohibiting defendant from working for Wendt-Bristol for a reasonable length of time in the future and so that the trial court may determine what length of time is a reasonable length of time.

Defendant's third assignment of error asserts that the trial court improperly awarded plaintiff its attorney fees. Defendant correctly asserts that attorney fees are not generally recoverable in the absence of either a statute authorizing their recovery or a showing of bad faith. *E.g., State, ex rel. Grosser,* v. *Boy* (1976), 46 Ohio St. 2d 184 [75 O.O.2d 228]; *Commercial Union Ins. Co.* v. *Travelers Ins. Co.* (Sept. 27, 1983), Franklin App. No. 82AP-465, unreported.

Although plaintiff has not cited a statute entitling it to recover its attorney fees, plaintiff has demonstrated that defendant acted in bad faith in her dealings with plaintiff. Defendant testified that she fully understood the contract when she signed it; that she realized Wendt-Bristol was a competitor when she accepted her new job; and that, after she interviewed for a job at Wendt-Bristol but while she was still employed by plaintiff, she entered a private office, removed her employment contract from a file cabinet and tore it up. Defendant signed the employment contract with the intent to receive the advantages of an increased salary and other perquisites but with no intention of complying with the restrictive covenant. Defendant's bad faith entitled plaintiff to recover its attorney fees, and defendant's third assignment of error is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed except to the extent that it enjoined defendant from working for Wendt-Bristol only until September 7, 1983. The case is remanded for the trial court to determine the period of time during which defendant should be enjoined from working for Wendt-Bristol.

*Judgment affirmed in part, reversed in part and remanded with instructions.*

STRAUSBAUGH and REILLY, JJ., concur.