OPINION
Defendants-appellants Richard Glass, Laura Glass and Project Management Services, Inc. appeal a provision of an injunction issued by the Columbiana County Common Pleas Court which prohibited said appellants from soliciting or completing contracts with customers who, in the past eighteen months, were the customers of plaintiff-appellee Provac Plant Services, Inc. For the following reasons, the trial court's decision is affirmed.
 STATEMENT OF FACTS
Richard Glass worked for his father who engaged in the business of water blasting, among other services. Mr. Glass then left his father's employ and organized his own water blasting company. In November of 1995, Mr. Glass joined with four other individuals who owned Provac Services and formed Provac Plant Services, Inc. to perform water blasting and vacuuming for industrial sites. Mr. Glass became a twenty percent owner of this closely held corporation. He acted as the general manager, Vice President, and member of the Board of Directors.
In January 1999, Laura Glass, the wife of Mr. Glass, purchased her father-in-law's business. This business was then incorporated under the name Project Management Services, Inc. Testimony established that Mr. Glass may have canceled various jobs which were scheduled to be performed by Provac. These jobs were then performed by Project Management. After Mr. Glass copied certain records of Provac which contained customer lists, billing records and bidding information, he tendered his letter of resignation to Provac. He then began working for, and allegedly running, Project Management.
Provac filed a civil complaint against appellants seeking damages. The complaint alleged breach of fiduciary obligation, conversion and civil conspiracy. Provac also sought injunctive relief to enjoin appellants from contacting its customers and employees. Depositions were taken, and multiple hearings were held regarding the request for injunctive relief. On June 8, 1999, the trial court issued an injunction which prohibited various acts by appellants. (No proceeding has since been held in the trial court regarding the suit for damages).
Appellants appeal from the following portion of the judgment entry:
 "[appellants shall not] solicit or complete any contracts with any customer with whom plaintiff had done business in the previous eighteen (18) months pending further order of this Court unless, defendants can prove to the satisfaction of this Court that any such contract bids were the result of written response to a written bid request sent generally to providers of services such as those performed by the parties of this lawsuit generally in the industry."
 ASSIGNMENT OF ERROR
Appellants sole assignment of error provides:
 "The trial court abused its discretion by prohibiting appellants from soliciting or contracting with any customer who had done business with the appellee in the previous 18 months."
The trial court found that appellants were using trade secrets of Provac that had been misappropriated. The Uniform Trade Secrets Act is codified at R.C. 1333.61 through R.C. 1333.69. Pursuant to R.C. 1333.62 (A), actual or threatened misappropriation of trade secrets may be enjoined and the injunction may continue until the court finds that commercial advantage has dissipated. Misappropriation includes the disclosure or use of a trade secret that was acquired by improper means or under circumstances giving rise to a duty to maintain its secrecy. R.C. 1333.61 (B) (2) (a), (b). The phrase "improper means" includes breach of a duty to maintain secrecy. R.C. 1333.61 (A). A trade secret is defined in R.C. 1333.61 (D) as follows:
 "any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfied both of the following:
 (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
 (2) It is subject of efforts that are reasonable under the circumstances to maintain its secrecy."
Appellants argue that the trial court abused its discretion as there was not clear and convincing evidence to support the contested portion of the injunction. In support thereof, appellants maintain that customer lists and past bids are not trade secrets since they are widely available in the trade and they are kept in an unlocked filing cabinet. Contrary to their contentions, however, the trial court did not hold that the mere customer lists or bidding procedures were trade secrets. Rather, the court determined that the customer lists combined with actual past bids on jobs under contract or purchase order are trade secrets.
Appellee responds that prior bids and customer lists with specific billing information are trade secrets and proprietary information which Mr. Glass misappropriated by breaching his fiduciary obligation to Provac as its Director, Vice-President and twenty percent shareholder. Appellee states that Mr. Glass is usurping Provac's corporate opportunities by bidding lower than Provac, using the information which he took from the company files.
 ANALYSIS
We agree with appellant that an employee without a noncompete contractual obligation to his former employer may solicit that employer's customers where there is no trade secret or confidential information utilized (although we must note that appellant was much more than a mere employee). Curry v. Marquart
(1937), 133 Ohio St. 77. Appellants urge that an injunction should only be granted upon a showing of clear and convincing evidence that plaintiff will suffer irreparable injury and that monetary damages are inadequate. Nonetheless, "the question of whether a particular knowledge or process is a trade secret is a question of fact to be determined by the trier of fact upon the greater weight of the evidence." Valco Cincinnati, Inc. v. N D MachiningServ., Inc. (1986), 24 Ohio St.3d 41, 47. See, also, Fred SiegelCo., L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, 181. Thus, the trial court need only find by a preponderance of the evidence that the customer lists, when combined with the prior bid information, were trade secrets. Thereafter, a reviewing court should not disturb the decision of the trial court relative to the granting and the framing of the terms of an injunction, absent a showing of a clear abuse of discretion. See Perkins v. QuakerCity (1956), 165 Ohio St. 120.
Here, two Provac record-keepers had custodial access to the prior bid information and basically monitored who could view the records. The fact that one of the record-keepers copied all past bids at Mr. Glass's request without questioning his motives is irrelevant. Mr. Glass was director, vice-president and general manager at that time. He was, and still is, a twenty percent shareholder. Shareholders in a close corporation generally owe a duty to fellow shareholders to maintain trade secrets and abstain from self-dealing. Crosby v. Beam (1989), 47 Ohio St.3d 105, 108, citing United States v. Byrum (1972), 408 U.S. 125 (applying Ohio law and holding that shareholders in a closely held corporation owed a fiduciary duty to each other).
Nonetheless, appellants contend that Provac's record-keeping system was not secure and thus the records were not trade secrets. Testimony revealed that the prior bids were kept in a filing cabinet to which the five shareholders and the record-keepers had access. Certain high level employees had access to individual bids on an as-needed basis if they placed a request with the record-keepers. However, testimony also established that one of the supervisors at Provac did not have access to the records. From this testimony, it does not appear that the trial court abused its discretion when it found that Provac's method of maintaining secrecy was reasonable under the circumstances. SeeVanguard Transp. Sys., Inc. v. Edwards Transfer Storage Co.
(1996), 109 Ohio App.3d 786, 791 (stating that sufficient evidence of precautionary measures to keep information secret can be produced through testimony that the information was only available to several employees). See, also, R.C. 1333.61 (D) (2) (requiring reasonable measures be taken to insure secrecy not substantial measures as appellants suggest).
As for appellants' argument that the customer lists and bid records were readily ascertainable by competitors and thus not trade secrets as contemplated by R.C. 1333.61 (D) (1), various individuals testified that companies do not reveal their bids to competitors, and that a company's prior bid for a job is not information that is readily available in the industry. Id.
(emphasizing the importance of testimony that shows that the rates charged to various customers is not public knowledge or obtainable by competitors). Witnesses testified that the secrecy of the prior bids has economic value because those that discover these secrets can underbid Provac when the job is up to be rolled over or rebid. See Consumer Direct, Inc. v. Limbach (1991), 62 Ohio St.3d 180
(holding that a customer list is an intangible asset which a company can keep from its competitors).
Appellants presented testimony at trial implying that employees can sneak into the records and that competitors can bribe employees of the customers to discover secret bid information. However, the possibility that information can be obtained illegally and/or unethically does not diminish the secret status of the information, nor does it absolve the fact that Mr. Glass breached his duty to prove by obtaining the information in question, and using it against them, thus, it does not appear that the court acted unreasonably, arbitrarily or unconscionably when it found that the bid information was a trade secret and ordered an injunction pursuant to R.C. 1333.62 (A).
Lastly, appellants argue that, even if the injunction against Mr. Glass was proper, the injunction against Project Management and Mrs. Glass was not. Nonetheless, R.C. 1333.61 prohibits misappropriation of trade secrets by entities other than solely the individual who originally misappropriated the information. Those who know or have reason to know of the status of the information are also barred. Thus, the court can bar the use of the information by Project Management and Mrs. Glass, whom the court found was merely the "straw" owner of Project Management. Accordingly, this assignment of error is overruled.
For the foregoing reasons, the decision of the trial court is affirmed.
Donofrio, J., concurs, Waite, J., concurs.
 _________________________ JOSEPH J. VUKOVICH, JUDGE